UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ROBERT L. WARFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:08-cv-1516-SEB-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Robert L. Warfield ("Warfield") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I.  Background**

Warfield filed applications for DIB and SSI on December 12, 2003, and January 9, 2004, respectively, alleging an onset date of disability of February 28, 2003. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on March 27, 2007. Warfield appeared, accompanied by his attorney. Medical and other records were introduced into evidence. Warfield, two medical experts, and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on April 26, 2007. On September 10, 2008, the Appeals Council denied Warfield's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Warfield met the insured status requirements of the Act through March 31, 2005; (2) Warfield had not engaged in substantial gainful activity since February 28, 2003, the alleged onset date; (3) Warfield had "severe" impairments consisting of osteoarthritis and hypertension; (4) Warfield did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Warfield had the residual functional capacity ("RFC") to perform a full range of medium work or lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday and perform unlimited pushing/pulling; and (6) Warfield was capable of performing his past relevant work as a forklift driver, as this work did not require the performance of work-related activities precluded by his RFC. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Warfield had not been under a disability as defined in the Act from February 28, 2003, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

In this case, the ALJ determined that Warfield had severe impairments consisting of osteoarthritis and hypertension, but that he could perform his past relevant work as a forklift driver. Warfield contends that the ALJ's decision is not supported by substantial evidence.

Warfield first argues that the ALJ improperly ignored the April 2, 2007, opinion of treating physician Dr. Ackermann, in which he stated that Warfield could not perform work activities for eight hours a day. (R. at 276-78). The Commissioner responds that the ALJ could not have "ignored" this evidence because it was first presented to the Appeals Council, never to the ALJ. The record shows that the report of Dr. Ackermann was first presented to the Social Security Administration on April 16, 2007, with a cover sheet directed to the ALJ. (R. at 15). The report was placed in the record as Exhibit D. (R. at 276-78). The ALJ's decision was dated April 23, 2007, but it did not mention Exhibit D.

The April 2, 2007, report by Dr. Ackermann was referenced by the Appeals Council as "additional evidence" which was made part of the record as Exhibit AC-1. (R. at 8-11). The Appeals Council treated the report as additional evidence and determined that such evidence did "not provide a basis for changing the Administrative Law Judge's decision." (R. at 9). It is reasonable to conclude that the April 2, 2007, was not before the ALJ at the time he completed drafting his decision.

Therefore, because it appears that the ALJ did not have the evidence before him at the time he drafted his decision, the ALJ did not improperly "ignore" the evidence. The Commissioner further correctly points out that Warfield does not seek a remand pursuant to sentence six, for which he would have to show that the evidence at issue was new and material and that there was good cause for why it was not tendered earlier to the ALJ.

Warfield next asserts that the ALJ erred in not mentioning the impression stated by consulting physician Dr. Issa that Warfield "is a 60YO white male with a history of arthritis in the upper and lower extremities causing chronic pain." (R. at 134). Warfield argues that this statement by Dr. Issa constituted significant evidence supportive of disability. The Commissioner responds that the court must not "nitpick" the ALJ's decision and that the language in question is not a medical finding; rather, it reflects Warfield's allegation of chronic pain.

In discussing the consultative examination by Dr. Issa, the ALJ acknowledged that Warfield walked with a mildly labored gait secondary to knee and hip pain, that Warfield had moderate difficulty in walking on heels and toes and in squatting, that Warfield had full range of motion of all joints, and that he had normal grip strength and fine finger manipulative abilities including the ability to button, zip and pick up a coin. (R. at 26). Dr. Issa's statement that Warfield had a history of arthritis that caused chronic pain was not dispositive of a finding of disability. Moreover, that assertion was not unique to Dr. Issa's "impression" and did not provide a measure of the severity of Warfield's pain. The ALJ was aware that Warfield alleged chronic pain, and in fact, the ALJ evaluated Warfield's allegations of pain. (R. at 23-25).

With regard to Warfield's osteoarthritis, the ALJ noted that treating physician Dr. Challa indicated that it was well controlled by medication. (R. at 25). The ALJ did not find that Warfield experienced no pain, but concluded that the record suggested that his symptoms were not as serious as alleged. *Id.* Under these circumstances, the ALJ's failure to mention this particular statement by Dr. Issa does not render the ALJ's decision flawed. The "omitted statement" is not an opinion of Warfield's functional capacity nor does it otherwise warrant any specific weight. The ALJ provided a fair review of Dr. Issa's report.

Next, Warfield argues that the ALJ's credibility determination was erroneous. He contends that the ALJ failed to apply facts to his statement of the legal standards. Specifically, Warfield asserts that the ALJ failed to discuss Warfield's activities of daily living, factors that aggravated his pain, what medications he took and any side effects thereof.

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In determining Warfield's credibility, the ALJ recited the appropriate regulations. (R. at 23, citing SSR 96-7p; SSR 96-4p; 20 C.F.R. § 404.1529, and 20 C.F.R. § 416.929). Those regulations identify seven examples of the type of evidence the ALJ should consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements about symptoms:

(1) The individual's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate and aggravate the symptoms;

4

> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any other measures the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Warfield argues that the ALJ failed to discuss his daily activities when evaluating his credibility. The ALJ did note Warfield's statements that his pain was constant, he could not walk more than one block and could not stand more than 15 minutes at a time before having to rest because of pain. (R. at 23). The ALJ noted Warfield's statements that it was difficult for him to squat, bend, lift or work above his head. *Id.* The ALJ also noted that during the hearing Warfield manifested no outward signs of pain, stiffness or movements, difficulty moving, pressured or halting speech, or grimacing. (R. at 24). Warfield testified that he spent his time watching television and visiting people. (R. at 316). He testified that he could carry at least 15-20 pounds. (R. at 317). He reported being able to cook and do laundry and house cleaning, so long as he did not stand too long. (R. at 73. 83). The Commissioner also points out that in 2004, Warfield worked two days each week driving cars at a car dealership. (R. at 83). There was no significant daily activity that the ALJ overlooked in evaluating Warfield's activity level.

Contrary to Warfield's suggestion that the ALJ failed to discuss Warfield's medications and any side effects, the ALJ did note that treating physician Dr. Challa reported that Warfield's osteoarthritis and hypertension were well-controlled by medication. (R. at 25). The ALJ stated that Warfield "has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [his] favor, but the medical records also reveal that the medications have been relatively effective in controlling [his] symptoms." *Id.* Moreover, Warfield does not assert nor point to records supporting an assertion that he did, in fact, experience serious side effects from medications.

The ALJ assumed that because Warfield did not start physical therapy as recommended by his physician, Warfield's symptoms were not as serious as he alleged. (R. at 25). The court agrees with Warfield that the ALJ should have expressly considered whether there was an explanation other than Warfield's symptoms not being as serious as alleged for his not following the recommended treatment. *See* SSR 96-7p ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"). Warfield argues that he could not afford treatment. The ALJ's failure to discuss this possible explanation or others could invalidate his assumption that any failure to pursue physical therapy or other treatment lessened Warfield's credibility. The ALJ's inference that Warfield may have gone to see Dr. Ackerman merely to "place his subjective complaints

5

into the doctor's medical record" rather than to receive "actual treatment" would suffer the same defect. (R. at 25). The court notes, however, that during the hearing the ALJ did ask Warfield how he paid for his medical care. (R. at 313). Warfield testified that he received medical services at Wishard Hospital where he paid a $10 co-pay for a doctor visit and $5 for each medication. (R. at 313-14). The ALJ should have discussed the issue of Warfield's ability to pay for treatments in relation to his assumptions as to the severity of Warfield's symptoms. On the other hand, Warfield has not pointed to evidence indicating that Warfield did not attend physical therapy because of the cost. Indeed, when asked how he paid for treatment, Warfield did not testify that he could not afford to pay the minimal co-pay charges. Any taint on the ALJ's credibility assessment in this regard does not rise to the level of reversible error.

In discussing Warfield's credibility, the ALJ stated that Warfield gave "a substantial amount of conflicting testimony" with respect to his past relevant work, where he worked and when. (R. at 23). As an example, the ALJ noted that Warfield testified that he last worked in 1991, but employment records showed that his work continued through 1995 and 1996. *Id.* The ALJ noted Warfield's complaints of pain in his hands, elbows, shoulders, hips and knees. (R. at 23). The ALJ reviewed the findings by the State Agency physicians, consulting examining physicians, treating physicians, and the medical experts who testified at the hearing. (R. at 24-26). Here, the ALJ provided specific reasons for his finding that Warfield was not fully credible. The ALJ discussed in sufficient detail the appropriate factors in weighing Warfield's credibility. The ALJ's discussion relating to Warfield's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis to be patently wrong, and therefore, must affirm the ALJ's credibility determination.

Warfield next contends that the ALJ failed to adequately consider his illiteracy. He argues that the ALJ erred in finding that "[t]here is no objective data in Dr. Smith's report, or in the record as a whole for that matter, that reasonably supports his conclusion that the claimant has the first grade reading limitations." (R. at 25). Warfield points out that Dr. Smith administered the Wide Range Achievement Test, Revision 3, Reading (WRAT-3) to Warfield. The results of that test indicated that Warfield had a Standard Score of 53 with a percentile rank of 0.1 and a Grade Score of first grade. (R. at 274). Warfield's reading ability was reported as "very low." *Id.* It is true that the ALJ overlooked such findings as to Warfield's inability to read. The Commissioner argues that because the ALJ determined that Warfield could perform his past relevant work, such error was harmless. The psychological expert Dr. Olive testified that there was no evidence that Warfield's ability to read deteriorated after he stopped working. (R. at 306-07). Warfield's inability to read did not prevent him from driving a forklift for 16 years. Under these circumstances, the ALJ's failure to find Warfield illiterate was harmless error.

Warfield's final argument is that the ALJ erred in finding that Warfield's impairments did not meet or equal a listing. Warfield asserts that the ALJ should have at least discussed and evaluated Listings 1.02 (dysfunction of a joint), 4.03 (hypertensive cardiovascular disease), 12.04 (affective disorder), and 12.05 (mental retardation).

6

At step three of the analysis, the ALJ discussed listings as follows:

> The claimant's impairments have been evaluated in the context of the Listings and the overall evidence of record demonstrates that he does not manifest clinical signs and findings that meet the specific criteria of any of the Listings. Specifically, Dr. Boyce testified that the claimant's impairments are not at listing level. Furthermore, Dr. Olive, the psychological medical expert testified that the record contained scant evidence of any mental impairment and the GAF estimate was 58-60 and did not meet or equal any of the listings.

(R. at 22).

An ALJ's failure to mention appropriate listings, if combined with a perfunctory analysis in light of the evidence provided, may compel a remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a perfunctory analysis, may require a remand") (internal quotation omitted); *See also Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) ("As to Rice's argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here.").

In this case the ALJ noted that both medical experts testified at the hearing that Warfield's impairments did not meet any listing. (R. at 22). Dr. Boyce, internal medicine, testified that Warfield's hypertension and osteoarthritis did not rise to the level of a listing. (R. at 293). Dr. Olive, psychologist, testified that Warfield had been diagnosed with mild/moderate depression and an unspecified anxiety disorder. (R. at 303). Dr. Olive stated that Warfield's limitations were not at a listing level and that although Warfield's intellectual levels were low average, he did not see an actual IQ test score in the record. (R. at 303-04). Moreover, Warfield as the claimant, "has the burden of showing that [his] impairments meet a listing, and he must show that [his] impairments satisfy all of the various criteria specified in the listing." *Ribaudo*, 458 F.3d at 583. Warfield has not pointed to evidence that demonstrates that all of the criteria of any listing were satisfied. Under these circumstances, Warfield did not satisfy his burden of showing that any impairment satisfied a listing, and the ALJ's failure to mention specific listings was not reversible error.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Warfield's impairments and the decision contains no reversible legal error, the ALJ's decision must be affirmed.

## III.  Conclusion

There was no reversible error in the assessment of Warfield's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Warfield is not entitled to relief in this action. The Commissioner's decision is affirmed.  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:  03/04/2010

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana